OHIO ASSOCIATION OF PUBLIC SCHOOL EMPLOYEES, CHAPTER 643, AFSCME/AFL-CIO, APPELLANT, *v.* DAYTON CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL-CIO *v.* Dayton City School Dist. Bd. of Edn. (1991), 59 Ohio St. 3d 159.]

(No. 90-143—Submitted January 9, 1991—Decided May 15, 1991.)

*Lucas, Prendergast, Albright, Gibson & Newman* and *Rankin M. Gibson,* for appellant.

*John F. Lenehan,* for appellee.

*Lee I. Fisher,* attorney general, and *Joseph M. Oser,* urging affirmance for *amicus curiae,* State Employment Relations Board.

H. BROWN, J. For the reasons which follow, we conclude that a determination by the State Employment Relations Board as to whether to prosecute an unfair labor practice charge is not an adjudication, and affirm the judgment of the court below.

R.C. 4117.11 designates certain acts by employers or employee representatives as unfair labor practices which may be remedied by SERB. R.C. 4117.12(A). R.C. 4117.12(B) provides the means by which the prohibitions of R.C. 4117.11 may be enforced. Any person may file a charge with SERB. Once a charge is filed, "* * * the board [SERB] or its designated agent shall investigate the charge. If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge * * *" to adjudicate whether an unfair labor practice has in fact occurred.

Quasi-judicial adjudications by SERB are, of course, subject to judicial review pursuant to R.C. Chapter 119 and R.C. 4117.02(M). *South Community, Inc.* v. *State Emp. Relations Bd.* (1988), 38 Ohio St. 3d 224, 527 N.E. 2d 864, syllabus. R.C. 4117.13 also specifically provides for judicial enforcement and review of unfair labor practice adjudications. However, SERB's investigation and evaluation of an unfair labor practice charge filed by a private party are clearly not an adjudication. *Ohio Assn. of Pub. School Emp.* v. *Cleveland Bd. of Edn.* (1987), 37 Ohio App. 3d 126, 524 N.E. 2d 532. Before a complaint is issued, "* * * there is no requirement for notice, hearing, and the opportunity for introduction of evidence." *M.J. Kelley Co.* v. *Cleveland* (1972), 32 Ohio St. 2d 150, 61 O.O. 2d 394, 290 N.E. 2d 562, paragraph two of the syllabus. Because there has been no hearing, there is no record to be filed with the reviewing court as required by R.C. 4117.13(A) and (D). The only record of SERB's investigation is its investigatory file, which is confidential. See *Franklin Cty. Bd. of Commrs.* v. *State Emp. Relations Bd.* (Feb. 3, 1988), Franklin C.P. No. 87CV-12-8196, unreported (reprinted in 1988 SERB 4-16). SERB's role in this early stage of the proceeding is most closely analogous to that of a public prosecutor investigating a citizen's complaint of criminal activity. In either case, the decision not to prosecute is discretionary, and not generally subject to judicial review. *State, ex rel. Murr,* v. *Meyer* (1987), 34 Ohio St. 3d 46, 516 N.E. 2d 234.

Nor is there a private right to enforce the unfair labor practice provisions of R.C. 4117.11 without the participation of SERB. "The unfair labor practices listed in * * * [R.C.] 4117.11 are the vehicles for each opposing side to challenge the other, through the intervention of the Board. But as much as they seem to be private grounds for attack, they are public in nature. The concept is a public right, where privately initiated complaints are carried through to decision at public expense, with the state vindicating the private persons' rights through public proceedings." (Footnotes omitted.) O'Reilly, Ohio Public Employee Collective Bargaining (1984) 51-52, Section 9.01; see, also, *Franklin Cty. Law Enforcement Assn.* v. *Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St. 3d 167, 572 N.E. 2d 87, decided this day.

Nevertheless, the dissent mistakenly asserts that R.C. 4117.13(D) subjects probable cause determinations to judicial review. As is clear from a review of the statute as a whole, R.C. 4117.13 applies only to the enforcement and review of SERB's final order resulting from an adjudication on the merits of an unfair labor practice case. It does not grant this right to appeal quasi-prosecutorial determinations to proceed or not proceed with unfair labor practice complaints. The language granting a right of appeal to "[a]ny person aggrieved by any final order * * * denying * * * the relief sought * * *," upon which the dissent so heavily relies, is intended to allow the charging party to appeal where SERB, after a full hearing, finds that an unfair labor practice has not been committed. A probable cause determination is not a final order resulting from an adjudication on the merits of an unfair labor practice case. One must mangle the plain wording of the statute in question in order to effect the "public policy" which the dissent wants to implement.[1]

---

[1] Given that the General Assembly has made a clear policy choice which we are compelled to respect, the dissent's comments are more properly directed to that

It is worthwhile to compare R.C. 4117.13(D) to 4112.06(A), which governs judicial review of actions by the Ohio Civil Rights Commission. The commission's role in unlawful discrimination cases is analogous to SERB's role in unfair labor practice cases. The commission investigates citizen complaints and issues a complaint if it finds probable cause that unlawful discrimination has occurred. R.C. 4112.05(B). R.C. 4112.06(A) grants a right of appeal to anyone "* * * aggrieved by a final order of the commission, *including a refusal to issue a complaint * * *.*" (Emphasis added.) If the commission's probable cause determinations were "final orders" as that term is generally used, the General Assembly would not have needed to add the emphasized language to subject these determinations to judicial review. Conversely, the fact that no such language appears in R.C. 4117.13(D) evinces a clear intent to treat SERB's probable cause determinations differently — to make them *not* subject to judicial review.

The General Assembly has made its intent known in plain and unambiguous terms, and we have no power to "construe" the statute to reach a different result. *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E. 2d 413, paragraph five of the syllabus; see, also, *Cleveland Trust Co.* v. *Eaton* (1970), 21 Ohio St. 2d 129, 138, 50 O.O. 2d 354, 359, 256 N.E. 2d 198, 204; *Slingluff* v. *Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574.

We also note that the procedures for unfair labor practice cases mandated by R.C. 4117.12 and 4117.13 are substantively identical to those established in Section 10 of the National Labor Relations Act to govern unfair labor practice cases before the National Labor Relations Board. Section 160, Title 29, U.S. Code. It has long been established that a decision by the NLRB's General Counsel not to issue an unfair labor practice complaint is not reviewable by the courts. *George Banta Co.* v. *Natl. Labor Relations Bd.* (C.A.4, 1980), 626 F. 2d 354.

Accordingly, we hold that a decision by SERB whether or not to issue a complaint in an unfair labor practice case is not reviewable pursuant to R.C. Chapter 119 or R.C. 4117.02(M) and 4117.13(D). The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

---

body. However, we do note that there are several reasons why it would not necessarily be desirable from a public policy standpoint to adopt the dissent's interpretation of R.C. Chapter 4117.

For instance, one party to a labor dispute (be it the employer, the collective bargaining representative, or a rival union) might file a series of unfounded, but colorable, unfair labor practice charges against its opposition as a means of harassment. When SERB dismisses these charges for lack of probable cause, the charging party could, under the dissent's interpretation, extend the harassment through two appeals of right, to the court of common pleas and the court of appeals, and a possible discretionary appeal to this court, forcing the charged party to expend time and money in court defending its interests. The danger is particularly acute where the charging party is much stronger, financially, than the charged party — a situation which could easily occur when the charging party is an employer and the charged party is a newly formed employee organization. While financial sanctions would perhaps ultimately be available under R.C. 4117.12(B), Civ. R. 11, or App. R. 23, they might come too late to prevent the charging party from securing an unfair and unwarranted advantage in an organizational campaign or in bargaining.

Further, if a finding that probable cause *does* exist were also deemed appealable, this would permit a charged party which is guilty of unfair labor practices to delay remedial action by SERB for the duration of the appeal process.

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

RESNICK, J., concurs separately.

SWEENEY and DOUGLAS, JJ., dissent.

ALICE ROBIE RESNICK, J., concurring. I concur in the majority opinion but write separately. Our entire government is established on a system of checks and balances. This fact is true of all governmental bodies. However, there is no review pursuant to R.C. 4117.02 when the State Employment Relations Board, composed of three individuals, finds no probable cause as to whether to prosecute an unfair labor practice claim.

As stated by the majority, "* * * the process of investigating and evaluating an unfair labor practice charge filed by a private party is clearly not a quasi-judicial adjudication." The Eighth Appellate District in *Boieru* v. *State Emp. Relations Bd.* (1988), 54 Ohio App. 3d 23, 27, 560 N.E. 2d 801, 806, has noted that "[t]he decision to prosecute or not to prosecute a[n] [unfair labor practice] claim is a purely executory and nonjudicial function." This is apparent from the fact that no hearing or notices are required.

A non-judicial function cannot be made into a final appealable order under R.C. 2505.02. All that took place in this matter was an investigation, which is ministerial rather than quasi-judicial. Under R.C. 119.06, in order for an adjudication order to be valid, a hearing must be afforded in accordance with R.C. 119.01 to 119.13. R.C. 4117.02 has no provision for an adjudication hearing prior to the board's making its initial probable cause determination.

In order to hold that this initial decision finding no probable cause is a final appealable order, this court would have to redraft R.C. 4117.02. It is not the function of this court to legislate. However, I strongly recommend that the General Assembly review R.C. 4117.02 to decide whether it is advisable to entrust unbridled discretion in a three-member board to determine whether probable cause exists to prosecute an unfair labor practice charge. I believe it is advisable that these decisions be reviewed, otherwise excessive authority is held by one agency. To be true to the system of checks and balances by which our government operates, R.C. 4117.02 should be legislatively amended.

DOUGLAS, J., dissenting. Because the majority is fundamentally wrong on the facts, on the law, and on the public policy which this case impacts, I must respectfully dissent.

The facts and procedural posture of this case are not complicated.

On November 9, 1987, Constance D. Wright was hired by appellee, Dayton City School District Board of Education. Wright was assigned to work as an instructional aide for fifth-grade teachers. As a paraprofessional, Wright became associated with the Ohio Association of Public School Employees, Chapter 643, AFSCME/AFL-CIO, appellant herein, which represents board of education paraprofessionals.

Wright alleges that she is the sister of Mary Manuel who has been president of Chapter 643 for fourteen years. Apparently, arising out of her duties as president of Chapter 643, there is some animosity surrounding Manuel. Manuel had instructed Wright not to tell anyone that they (Manuel and Wright) were sisters because the animosity toward Manuel might work against Wright.

Inadvertently, Wright disclosed her relationship with Manuel and, shortly thereafter, Wright's employ-

ment was terminated. This occurred after Wright had been told by the principal of her school that he was satisfied with her work and that he had "no complaints."

Based upon these facts and other information obtained by appellant, appellant filed an unfair labor practice ("ULP") charge with the State Employment Relations Board ("SERB"). Appellant alleged a violation of R.C. 4117.11(A)(1) and (3). Subsequently, SERB dismissed the charge, finding "* * * no probable cause to believe that the Charged Party has violated Ohio Revised Code Section 4117.11."

From SERB's order, appellant appealed to the Common Pleas Court of Montgomery County. That court dismissed the appeal for lack of subject matter jurisdiction. Upon further appeal, the court of appeals affirmed the judgment of the trial court and specifically found that the General Assembly did not intend that SERB's determination of lack of probable cause should be a final appealable order under R.C. 4117.13(D). The matter is now before this court for final determination.

---

[2] Subsequent to this dissent being written, the majority opinion was amended to include a discussion of R.C. 4117.13. The majority opinion now addresses the dissenting opinion in some detail and because of this, at best, unusual procedure (discussion of a dissenting opinion in a majority opinion), I find it necessary to leave the dissenting opinion intact as originally written.

In its discussion, the majority finds that R.C. 4117.13 is inapplicable to the case at bar since, according to the majority, "* * * R.C. 4117.13 applies only to the enforcement and review of SERB's final order resulting from an *adjudication* on the merits of an unfair labor practice case. * * *" (Emphasis added.) The majority also states that "R.C. 4117.13 * * * specifically provides for judicial enforcement and

## I
## R.C. Chapter 119

The appeal before us is brought to this court (and the lower courts) upon the authority of R.C. Chapter 4117. There is no indication that appellant invokes the provisions of R.C. Chapter 119, notwithstanding what is found in the syllabus and the body of the majority opinion.

The majority premises its holding on the basis of the terms "adjudicate" and "quasi-judicial adjudication." The majority does so in order to reach its preconceived result. The term "adjudication" is found in R.C. 119.12 — but is not found in R.C. Chapter 4117 and specifically R.C. 4117.13(D), the section of the Revised Code upon which appellant bases its appeal.

## II
## R.C. Chapter 4117 and Specifically R.C. 4117.13(D)

The majority opinion completely avoids citing or discussing R.C. 4117.13(D).[2] I suspect this is for a good reason. If the majority were to review and decide this case on the basis of the self-contained law governing unfair

review of unfair labor practice *adjudications.* * * *" (Emphasis added.)

Therein lies, at least in part, the majority's confusion. The majority's sleight of hand will pass to a reader with little or no knowledge of the Public Employees' Collective Bargaining Act, but it cannot pass to anyone who reads the Act with understanding and quickly observes that the term "adjudication" is not found in R.C. Chapter 4117 and, specifically, that it is *not* found in R.C. 4117.13(D). The term "adjudication" *is* found in R.C. 119.12, whereas in R.C. 4117.13(D), the term used is "final order." There is a difference, and there is meant to be, between an appeal brought pursuant to R.C. Chapter 119 and an appeal brought pursuant to R.C. 4117.13(D).

Further, it will be noted that the major-

labor practices (R.C. 4117.12 and 4117.13) then, I believe, the majority would be inexorably driven to a different conclusion. Ignoring the applicable law makes it easier for the majority to reach its desired result.

In pertinent part, R.C. 4117.13(D) provides that "[a]ny person aggrieved by any *final order* of the board granting or *denying,* in whole or in part, the relief sought [unfair labor practice finding] may appeal to the court of common pleas of any county where the unfair labor practice in question was *alleged* to have been engaged in * * * by filing in the court a notice of appeal setting forth the order appealed from and the grounds of appeal * * *.

"The court has exclusive jurisdiction to * * * make and enter a decree enforcing, modifying, and enforcing as so modified, *or setting aside in whole or in part the order of the board.* * * *" (Emphasis added.)

The statute is clear. *Any* final order of the board *denying* the relief sought may be appealed to the court of common pleas. Further, the statute does *not* say that an appeal may only be taken from an adjudication that a ULP was committed. The statute says the appeal may be filed in any county where the ULP is *alleged* to have been engaged in. Certainly, in using the word "alleged," the General Assembly could not have been contemplating a ULP which had already been determined to have occurred. No explanation should be needed as to the word "alleged." We all use the term enough to know what we mean — and what it means.

It also must be noted that in the same section the General Assembly

---

ity, by the adroit use of ellipses, conveniently leaves out part of the verbiage of R.C. 4117.13(D). Among others, the words "in whole or in part" and the word "alleged" are omitted by the majority, as is any discussion by the majority of this language. This seems a bit strange given the following quote from the majority opinion in *Ford Motor Co.* v. *Ohio Bur. of Emp. Serv.* (1991), 59 Ohio St. 3d 188, 190, 571 N.E. 2d 727, 729:

"'The presumption always is, that every word in a statute is designed to have *some* effect, and hence the rule that, "in putting a construction upon any statute, every part shall be regarded, and it shall be so expounded, if practicable, as to give some effect to *every part of it.*"'" (Emphasis *sic.*) *Turley* v. *Turley* (1860), 11 Ohio St. 173, 179 (citing *Commonwealth* v. *Alger* [Mass. 1851], 7 Cush. 53, 89); see, also, R.C. 1.47(B) ('In enacting a statute, it is presumed that * * * [t]he entire statute is intended to be effective * * *.').'"

Likewise, in *Cleveland Elec. Illum. Co.* v. *Cleveland* (1988), 37 Ohio St. 3d 50, 524 N.E. 2d 441, we held at paragraph three of the syllabus: "In matters of construction, it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used. * * *"

The appropriate full context of R.C. 4117.13(D) is as set forth in the body of this dissenting opinion. The words used are significant and when read in context with the other parts of the section, it is clear what the General Assembly meant.

Finally, it is curious to read the reasoning of the majority in footnote 1 .with regard to their concern for possible "harassment" through the use of appeals. While this deathbed conversion is welcome — it is just a little late. Given that a majority of this court, in *South Community, Inc.* v. *State Emp. Relations Bd.* (1988), 38 Ohio St. 3d 224, 527 N.E. 2d 864, has authorized the appeal of a SERB order certifying an exclusive bargaining agent, the words of the majority herein, in footnote 1, that "[t]he danger is particularly acute where the charging party is much stronger, financially, than the charged party — a situation which could easily occur when the charging party is an employer and the charged party is a newly formed employee organization" ring hollow, indeed.

provided for enforcing or modifying, by the court, a finding of a ULP. However, the General Assembly then went on and by the use of the conjunctive word "or" provided for the setting aside of the *order* of the board — not just an adjudication or finding that a ULP had occurred.

This brings us then to the question of a "final order." There are three prongs to what is a "final order" as provided for in R.C. 2505.02.[3] If *any* prong is satisfied, then the order is a "final order." An action of SERB denying (or granting) a ULP charge fits into both prongs one and two of R.C. 2505.02.

It is clear that the dismissing for lack of probable cause of an alleged ULP affects a substantial right of a complaining party. Further, such an action by SERB effectively determines the action and prevents a judgment from being obtained by the complainant. Thus, all the requirements of the first prong are met and SERB's order is "final."

Likewise is the second prong met. Again, a complaining party's substantial right has been affected. Further, the order is made in a special proceeding. A "special proceeding" has been discussed by this court in numerous decisions, and I have expressed my views in *Stewart* v. *Midwestern Indemn. Co.* (1989), 45 Ohio St. 3d 124, 128, 543 N.E. 2d 1200, 1204 (Douglas, J., dissenting); *Dayton Women's Health Ctr.* v. *Enix* (1990), 52 Ohio St. 3d 67, 72, 555 N.E. 2d 956, 960 (Douglas, J., dissenting). Accord-ingly, the second prong of R.C. 2505.02 is also met.

Thus, we have specific statutory authority for appealing a final order of SERB which denies, in whole or in part, the relief sought when bringing a ULP charge.

### III

Two arguments are made as to why an order of SERB finding no probable cause for a ULP charge should not be appealable to the court. It is contended that a finding that such orders were appealable would require SERB to hold formal hearings on every ULP charge filing. It is further contended that permitting appeals of SERB's dismissals of ULP charges would open the "floodgates" of appeal.

Neither contention is correct. Upon the filing of a ULP charge, SERB assigns an investigator to interview and take statements from each of the parties and their witnesses. A report is then made to SERB. If SERB, based upon the evidence received and the report of its investigator, finds no probable cause, then SERB has the authority, pursuant to R.C. 4117.12(B)(3), to dismiss the complaint. No formal hearing, notice, etc. are required, any more than it is required when trial courts dismiss cases pursuant to Civ. R. 12(B)(6) or grant judgment pursuant to Civ. R. 56. Furthermore, as to the "floodgates" theory, cases appealed could be summarily dismissed pursuant to R.C. 4117.13(D) if the findings of SERB as to the facts are supported

---

[3] R.C. 2505.02 provides in pertinent part:

"[1] An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, [2] an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or [3] an order that vacates or sets aside a judgment or grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial."

by substantial evidence. If the factual findings of SERB are so supported, then the findings are conclusive.

Further protections are provided against the filing of frivolous ULP charges and the filing of sham pleadings and frivolous appeals. See R.C. 4117.12(B), App. R. 23 and Civ. R. 11.

The bottom line is that there should be judicial review of orders of SERB dismissing ULP charges on the basis of no probable cause, in the unlikely event that SERB makes a clearly erroneous and arbitrary decision. R.C. 4117.13(D) clearly provides for such appeal and common sense militates for such a holding. This is so until and unless this court holds that mandamus would be a proper remedy to challenge an abuse of discretion by SERB in ULP charge cases.

The majority should be reminded that this sharpened sword it fashions today can cut both ways. As an example, R.C. 4117.11(B)(8) makes it an unfair labor practice for an employee organization to "[e]ngage in any picketing, striking, or other concerted refusal to work without giving written notice to the public employer and to the state employment relations board not less than ten days prior to the action. * * *" Where an employee organization violates this provision, thereby causing the employer irreparable damage, and the employer files a ULP charge but a predisposed board dismisses for want of probable cause even though the violation is clear, would the majority hold that the employer has no right of judicial review? I would hope not — and so did the General Assembly by providing the clear language found in R.C. 4117.13(D).

Because I believe that the majority is just plain wrong in its rationale and pronouncements, I must vigorously, but respectfully, dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.