FRANKLIN COUNTY SHERIFF'S DEPARTMENT, APPELLEE, *v.* STATE EMPLOYMENT RELATIONS BOARD ET AL., APPELLANTS.

[Cite as *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498.]

(No. 90–2033—Submitted November 19, 1991—Decided April 22, 1992.)

*Schottenstein, Zox & Dunn* and *Susan Porter,* for appellee.

*Lee I. Fisher,* Attorney General, *Joseph M. Oser* and *Barbara A. Serve,* for appellant State Employment Relations Board.

*Cloppert, Portman, Sauter, Latanick & Foley, Robert W. Sauter* and *Michael J. Hunter,* for appellant Fraternal Order of Police.

---

MOYER, C.J.

I

## Public Records

R.C. 149.43 states in pertinent part:

"(A) As used in this section:

"(1) 'Public record' means any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the Revised Code and to appeals of actions arising under that section, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law.

"(2) 'Confidential law enforcement investigatory record' means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

"* * *

"(c) Specific confidential investigatory techniques or procedures or specific investigatory work product[.]

"* * *

"(4) 'Trial preparation record' means any record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney.

"(B) All public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. Upon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. In order to facilitate broader access to public records, governmental units shall maintain

public records in such a manner that they can be made available for inspection in accordance with this division."

R.C. 4117.17 states:

"Formal charges, petitions, complaints, orders, evidence, fact-finding recommendations, and other proceedings instituted by the state employment relations board under Chapter 4117. of the Revised Code are public records and available for inspection or copying subject to rules made by the board. All hearings on complaints or petitions pursuant to Chapter 4117. of the Revised Code are open to the public."

Appellants argue that R.C. 4117.17 rather than R.C. 149.43 governs access to SERB's files. They contend that R.C. 4117.17 is a specific statute covering the same subject matter as R.C. 149.43 and therefore prevails over the latter, more general statute.

R.C. 1.51 states:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

As R.C. 1.51 states, if there is a conflict and the statutes cannot be construed to give effect to both, the special provision ordinarily prevails. We, however, find no conflict between the statutes in question. R.C. 149.43 provides a broad definition of public records. R.C. 4117.17 provides specific direction when a request for SERB's records is made. For example, there can be no question now, as there may have been prior to the enactment of R.C. 4117.17, that the specifically designated categories in R.C. 4117.17 constitute public records. However, R.C. 149.43 must be applied to SERB's records not specifically designated in R.C. 4117.17 and to exceptions such as "trial preparation" materials and confidential law enforcement investigatory records. Effect may be given to both statutes because a determination of whether certain of SERB's records are public begins with R.C. 4117.17. If there remains a question, R.C. 149.43 must be applied. We must assume that had the General Assembly intended R.C. 4117.17 to be exclusive of other public records statutes, one or both of the statutes would reflect that intention.

The first question, therefore, is whether the records listed in R.C. 4117.17 include SERB's investigatory files. Two references in the statute are applicable—"evidence" and "other proceedings instituted."

It is clear by the terms of R.C. 4117.12(B) that when a charge is filed with SERB, the purpose of SERB's investigation is to gather evidence that tends to prove or disprove the charge. Based on the evidence before it, SERB initially determines whether there exists probable cause upon which to issue a complaint. While there may be material in SERB's investigatory file that is not evidence and not available to the public, that material may be redacted by a trial judge after an *in camera* inspection of the files. All evidence in the files that is not excepted under R.C. 149.43 must be disclosed, as "evidence" is a category specifically designated in R.C. 4117.17.

R.C. 4117.17 also states that "other proceedings instituted" by SERB are public. Appellants' assertion that the General Assembly intended to exclude items not specifically listed is unsupported and without merit. The clear language of the statute demonstrates that the General Assembly intended a policy of openness for proceedings by SERB. Investigatory files are therefore not implicitly excluded under this language and, unless excepted from disclosure, are public records under R.C. 149.43.

As stated *supra,* "evidence" in SERB's investigatory files must be disclosed. Pursuant to R.C. 149.43, the balance of the information in SERB's investigatory files must also be disclosed unless the material is specifically excepted, because such files constitute a record kept by a public office. Appellants claim the file is excepted under R.C. 149.43. An analysis of the exceptions under that statute is therefore required.

SERB argues that the records need not be disclosed because (1) SERB's unfair labor practice investigatory file consists of "trial preparation records" as the term is used in R.C. 149.43(A)(4), and (2) SERB's file is a "confidential law enforcement investigatory record" under R.C. 149.43(A)(2), the release of which would disclose confidential information.

"A governmental body refusing to release records has the burden of proving that the records are excepted from disclosure by R.C. 149.43." *State, ex rel. Natl. Broadcasting Co., v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, paragraph two of the syllabus.

Material cannot be excepted from disclosure simply by an agency's broad assertion that it constitutes trial preparation records. For the trial preparation exception to apply, the records must have been "specifically compiled in reasonable anticipation" of litigation. R.C. 149.43(A)(4). We have previously held that when an investigation has multiple purposes, the records of that investigation cannot be said to be trial preparation records. See *State, ex rel. Coleman, v. Cincinnati* (1991), 57 Ohio St.3d 83, 566 N.E.2d 151; *State, ex rel. Zuern, v. Leis* (1990), 56 Ohio St.3d 20, 564 N.E.2d 81.

There is nothing in the record to suggest that SERB's files meet the burden required to except them from disclosure. As stated in *State, ex rel. Natl.*

*Broadcasting Co., v. Cleveland, supra,* the burden is on SERB to demonstrate that the records fall within the claimed exclusion. R.C. 4117.12(B) requires that when a charge alleging an unfair labor practice is filed, SERB shall "investigate the charge," and if there is probable cause for believing a violation has occurred, it "shall issue a complaint and shall conduct a hearing concerning the charge. * * * " If probable cause is not found, SERB will dismiss the complaint. See R.C. 4117.12(B). In fact, in addressing a different issue, SERB itself argues in its brief, "[t]he investigatory file is used by SERB in determining probable cause. Probable cause was determined on November 25, 1987. * * * After SERB's probable cause determination, the case thereafter proceeds on a blank slate. The only evidence SERB considers when determining the merits of a case is that which is introduced at the public hearing. * * * " This investigative process cannot be said to be "specifically compiled in reasonable anticipation" of litigation as described in R.C. 149.-43(A)(4). Only after probable cause has been found in SERB's initial investigation, and it determines that a complaint shall issue, can further compilation of information arguably be deemed to be in reasonable anticipation of litigation. The decision to prosecute is not an adjudication. *Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL–CIO v. Dayton City School Dist. Bd. of Edn.* (1991), 59 Ohio St.3d 159, 572 N.E.2d 80.

The first anticipated litigation is the hearing on the complaint before SERB's hearing officer. As the burden is on SERB to demonstrate the applicability of the trial preparation exception, it is free to submit the records to the trial court for an *in camera* scrutiny rather than turn them over directly to the sheriff. *State, ex rel. Natl. Broadcasting Co., v. Cleveland, supra.* Investigatory files compiled by SERB pursuant to R.C. 4117.12 must be disclosed upon request pursuant to R.C. 4117.17 and 149.43 unless an *in camera* inspection demonstrates that all or any portions of the files are excepted from disclosure. Excepted information may be redacted prior to disclosure. The same standard must be applied to appellants' claim that the material constitutes "confidential law enforcement investigatory records" excepted from disclosure.

SERB argues that disclosure of its records will necessarily reveal its specific confidential investigatory techniques "designed to ferret out information" by way of strategies "similar to a deft cross-examination." While this may be true, it is not for this court to decide. The purpose of an *in camera* inspection by the trial judge is to determine whether such confidential techniques would be revealed. Neither this court nor any other court can determine whether confidential information will be revealed without an examination of that information.

Appellants also argue that the sheriff failed to preserve the public records issue for review on appeal. They contend that the only request for the records was made by the sheriff's counsel in an oral motion to the hearing officer to compel the Attorney General, SERB's counsel, to produce the documents. Appellants maintain that because there was no specific request of SERB to produce the records, a proper request to the "person responsible" for the records under R.C. 149.43(B) was not made. Contrary to this argument, the sheriff did make a proper request for the documents. The request was made to SERB's counsel, the Attorney General. R.C. 149.43(B) states that "[u]pon request, a person responsible for public records shall make copies available at cost, within a reasonable period of time. * * * " As SERB was represented by counsel, the sheriff's request for the public records from SERB's counsel was proper. No specific form of request is required by R.C. 149.43.

Finally, appellant SERB contends that because the sheriff was not prejudiced by SERB's failure to produce the investigatory file, the court of appeals erred in ordering the trial court to conduct an *in camera* inspection of the records. This argument also must fail. There is no way to determine whether the sheriff has been prejudiced, because the files have never been viewed by the sheriff or by a court.

## II

### Remand

SERB's order of December 22, 1988 required the sheriff to, *inter alia:*

"A. Cease and desist from:

" * * *

"(2) Discriminating in regard to hire or tenure of employment or any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117 of the Revised Code. Nothing precludes any employer from making and enforcing an agreement pursuant to Division (D) of Section 4117.09 of the Revised Code."

In its February 24, 1989 judgment entry, the trial court ordered: "The Motion by SERB to take additional evidence on the revocation of the auxiliary commissions after SERB's ruling was issued, is sustained. The matter is referred back to SERB to take new evidence on the January, 1989 Sheriff's Department's revocation or failure to renew auxiliary commissions held by Deputy 1s employed by the Sheriff's Department. * * * "

The court of appeals determined that the trial court impermissibly expanded its scope of authority in ordering the remand. R.C. 4117.13(B) provides:

"The findings of the board as to the facts, if supported by substantial evidence, on the record as a whole, are conclusive. If either party applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that the additional evidence is material and that there exist reasonable grounds for the failure to adduce the evidence in the hearing before the board, its member or agent, the court may order the board, its member, or agent to take the additional evidence, and make it a part of the transcript. The board may modify its findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and it shall file the modified or new findings, which, if supported by the evidence, are conclusive and shall file its recommendations, if any, for the modifying or setting aside of its original order."

The court of appeals determined that the additional evidence to be taken by SERB upon the trial court's remand was not material to SERB's December 22, 1988 order because the evidence did not concern the propriety of the initial order, but addressed only whether the sheriff was violating the initial order.

SERB's initial order did cover the issue that was to be addressed on remand as is demonstrated in the portions of SERB's December 22, 1988 order quoted *supra*. The court of appeals correctly determined that SERB's December 22 order dealt with the revocation of three auxiliary commissions. But the order also proscribes continuing conduct of the sheriff regarding terms of employment of his deputies.

Moreover, we find no basis for the sheriff's argument that post-order conduct is not a proper ground for remand under R.C. 4117.13(B). Under the statute, there need only be "reasonable grounds" for the failure to adduce the evidence in the original hearing. The nonexistence of evidence is a reasonable ground for failing to produce the evidence at the first hearing. The conduct at issue was material to SERB's order directing the sheriff to cease and desist from "[d]iscriminating in regard to * * * any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117 of the Revised Code." On remand, SERB found that the sheriff's refusal to renew auxiliary commissions violated its previous order. Pursuant to R.C. 4117.-13(B), it is within the trial court's discretion to remand a case to SERB to take additional evidence regarding a violation of the order being appealed.

## III

### Unfair Labor Practices

The court of appeals reversed the judgment of the trial court, holding that it "abused its discretion in finding the [December 1988] order to be supported by substantial evidence on the record as a whole."

The proper standard to be applied by the trial court in reviewing a decision by SERB was stated by this court in *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260, 533 N.E.2d 264, 266, as follows:

" * * * Such disputes are properly determined by SERB, which was designated by the General Assembly to facilitate an amicable, comprehensive, effective labor-management relationship between public employees and employers. * * * [Citation omitted.] As long as SERB's decision on such matters is supported by substantial evidence, it must be affirmed. Courts should not be required to intervene in every factual dispute between contesting parties."

The review by the court of appeals is confined to the issue of whether the trial court abused its discretion. *Lorain, supra,* at 261, 533 N.E.2d at 267. An abuse of discretion involves more than an error of law or of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable or arbitrary. *State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster* (1986), 22 Ohio St.3d 191, 22 OBR 275, 489 N.E.2d 288; *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685. For the following reasons, we hold that the court of appeals improperly substituted its judgment for that of the trial court.

The trial court affirmed SERB's finding that the sheriff had engaged in unfair labor practices in violation of R.C. 4117.11(A)(1), (3), and (8), which state:

"It is an unfair labor practice for a public employer, its agents, or representatives to:

"(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;

" * * *

"(3) Discriminate in regard to hire or tenure of employment or any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117. of the Revised Code. Nothing precludes any employer from making and enforcing an agreement pursuant to division (C) of section 4117.09 of the Revised Code.

" * * *

"(8) Cause or attempt to cause an employee organization, its agents, or representatives to violate division (B) of this section."

The court of appeals found that: "This court cannot agree that the timing of the revocations [of the two deputies' commissions] was in such close

proximity as to warrant an inference of discriminatory intent. * * * " It also determined that other conduct and statements by the sheriff did not support a finding of anti-union bias.

The findings of SERB were based on specific evidence presented to the hearing officer. The hearing officer's findings, adopted by SERB, state in part:

" * * * [I]t is patently clear that the three deputies were engaged in the exercise of rights guaranteed in O.R.C. Chapter 4117. All three deputies filed grievances pursuant to the collective bargaining agreement and submitted the grievances to arbitration. Immediately thereafter, the deputies were notified that their auxiliary commissions were being revoked. The evidence demonstrated that the reasons given for the revocation were pretextual. * * * "

All evidence upon which SERB's findings were based is clearly set out in the records of the hearings. The findings of the hearing officer were adopted by SERB in its order of December 22, 1988.

Upon review after remand, the trial court determined that SERB's orders were supported by "substantial evidence and in accordance with law." The court of appeals reviewed the evidence and held that the finding of violations was not supported by substantial evidence. It held that because, in its judgment, the evidence was not substantial, the trial court abused its discretion. The fact that the court of appeals viewed the evidence differently than did the trial court does not support the court of appeals' conclusion that the trial court abused its discretion. A review of the record indicates that the trial court did not abuse its discretion when it determined that the orders of SERB were supported by substantial evidence. For the foregoing reasons, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded*
*to the trial court*
*for further proceedings not*
*inconsistent with this opinion.*

SWEENEY, STEPHENSON, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in syllabus and judgment.

EARL E. STEPHENSON, J., of the Fourth Appellate District, sitting for HOLMES, J.

DOUGLAS, J., concurring in syllabus and judgment. I concur with the syllabus law in this case and with the majority's judgment. I write separately for the purpose of making several observations in the wake of this court's holding in *Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME, AFL-CIO v. Dayton City School Dist. Bd. of Edn.* (1991), 59 Ohio St. 3d 159, 572 N.E.2d 80. The following facts are relevant to this discussion.

Appellant Fraternal Order of Police, Capital City Lodge No. 9 ("FOP"), and appellee, Franklin County Sheriff's Department ("department"), were parties to a collective bargaining agreement entered into pursuant to R.C. Chapter 4117. Under the terms of the agreement, FOP is recognized as the exclusive bargaining representative for all full-time sworn uniform deputies employed by the department who are classified as Deputy 1, Deputy 2 or Deputy 3. A Deputy 1 who has been granted an "auxiliary commission" is known as a "Deputy 1A." An auxiliary commission is granted by the department to a limited number of deputies and permits a deputy to, *inter alia*, perform "special duty" for private employers.

John V. Phillips II and James M. Harrow were Deputy 1As employed by the department. In February 1987, Phillips filed a grievance with the department under the terms of the collective bargaining agreement which provides for a five "step" grievance procedure. The final step ("Step Five") provides for the arbitration of disputes. In March 1987, Harrow also filed a grievance under the terms of the agreement. Phillips' and Harrow's grievances were denied at each of the first four steps of the grievance procedure.

By letter dated March 25, 1987, FOP notified the sheriff of its intention to submit Phillips' grievance to arbitration. By letter dated April 6, 1987, FOP notified the sheriff of its intention to submit Harrow's grievance to arbitration. On April 9, 1987, the sheriff ordered that Phillips' and Harrow's auxiliary commissions be revoked effective April 10, 1987. The sheriff also notified Deputy Elisabeth Kirby that her auxiliary commission would be revoked but, apparently, Kirby had not been granted an auxiliary commission. However, Kirby did, at that time, have a grievance pending arbitration.

Thereafter, Phillips filed a second grievance alleging that his auxiliary commission had been revoked in retaliation for Phillips having pursued his initial grievance to arbitration. On May 1, 1987, the sheriff, having been informed that FOP intended to process Phillips' auxiliary-commission grievance, issued the following statement in a newsletter distributed to all employees with their paychecks:

"*AUXILIARY COMMISSIONS*—It is my understanding from the FOP headquarters that the two grievances filed by those individuals who lost them were going to arbitration. It appears that the FOP is bound and determined

to try to run this administration. We have tried just about every reasonable approach to help the officers of this department and they are just as determined not to let us. In order to protect ourselves against charges of disparaging treatment, it appears we will have to cancel all auxiliary commissions currently held by Deputy 1's. I guess you know who to thank—That is somethin."

The evidence indicates that the sheriff's intention to revoke all auxiliary commissions was in direct response to the decision by FOP to process Phillips' auxiliary-commission grievance. Apparently, the sheriff repeated his intention, on a number of occasions, to persuade FOP not to pursue any action regarding the revocation of auxiliary commissions.

On June 15, 1987, FOP filed with appellant State Employment Relations Board ("SERB") an unfair labor practice charge against the department. FOP alleged that the revocation of Phillips' and Harrow's auxiliary commissions and the threatened revocation of all auxiliary commissions represented a " * * * blatant, classic, and clear cut act of discrimination, interference and coercion against employees for the exercise of rights guaranteed under Chapter 4117, in violation of Revised Code Sections 4117.11(A)(1) and (3)." FOP also alleged that the sheriff's statements regarding revocation of all auxiliary commissions were designed to coerce FOP into failing to fairly represent Phillips and Harrow and that, therefore, the sheriff's actions were violative of R.C. 4117.11(A)(8).

In January 1988, SERB issued a complaint having found probable cause to believe that the department was violating, or had violated, R.C. 4117.11(A)(1), (3) and (8). A hearing was then conducted before a hearing officer appointed by SERB. At this hearing, the department requested that the hearing officer order SERB's attorney to provide the department with a copy of SERB's investigatory file. This request was denied. Following a full hearing, the hearing officer concluded that the department did violate R.C. 4117.11(A)(1), (3) and (8), and recommended to SERB that the department be ordered to cease and desist its alleged unlawful practices. The hearing officer further recommended that the department be ordered to reinstate Phillips' auxiliary commission and to otherwise make Phillips and Harrow whole for any actual economic loss suffered by them as a result of the revocation of the auxiliary commissions. On December 22, 1988, SERB issued an order adopting the hearing officer's findings of fact, conclusions of law and recommendations. SERB ordered that the department cease and desist its unlawful practices.

The department appealed SERB's order to the Court of Common Pleas of Franklin County pursuant to the provisions of R.C. 119.12 and 4117.13(D). The department also requested that the trial court stay enforcement of

SERB's order pending appeal. SERB filed a "cross-petition" for enforcement of the order. A hearing on these motions was conducted on February 13, 1989. At this hearing, evidence was presented that the sheriff, in January 1989, had either revoked or failed to renew *all* of the auxiliary commissions held by Deputy 1s. Thereafter, the trial court remanded the cause to SERB to take evidence on the issue whether the sheriff's post-order revocation or nonrenewal of the auxiliary commissions violated SERB's December 22, 1988 cease and desist order.

On remand, SERB concluded that the sheriff had violated the December 22, 1988 cease and desist order by nonrenewing or revoking all of the auxiliary commissions held by Deputy 1s employed by the department. Specifically, SERB determined that the sheriff had carried out his threats of retaliation against FOP and its membership for FOP having processed Phillips' auxiliary commission grievance and for FOP having filed an unfair labor practice charge. The department then "amended" its appeal to challenge SERB's determination on this issue as well.

The trial court, upon consideration of all the evidence, held that SERB's December 22, 1988 order was supported by substantial evidence and, further, that SERB's determination that its original order had been violated was also supported by substantial evidence. On appeal, the court of appeals reversed the judgment of the trial court. The cause is now before this court for final determination.

In the case at bar, SERB issued a complaint having found probable cause to believe that unfair labor practices had been, or were being, committed by the department. The majority holds, and I agree, that " * * * [a] review of the record indicates that the trial court did not abuse its discretion when it determined that the orders of SERB were supported by substantial evidence. * * *" Assume, however, that SERB had erroneously determined (for whatever reason) that there was *no* probable cause to believe that unfair labor practices had been, or were being, committed and, therefore, failed to issue a complaint in this matter. What would have been the remedy?

In this regard, a majority of this court in *Chapter 643, AFSCME, supra,* syllabus, held that "[a] decision by the State Employment Relations Board whether or not to issue a complaint in an unfair labor practice case is not reviewable pursuant to R.C. Chapter 119 or R.C. 4117.02(M) and 4117.13(D)." I dissented in *Chapter 643, AFSCME, supra,* and the case at bar is an example of the point set forth in my dissent. The point is that if SERB *had* dismissed, on the basis of no probable cause, the unfair labor practice charges herein, then such dismissal should be subject to some judicial review. Absent judicial review of such orders, SERB is granted the absolute, exclusive and

ultimate power to finally determine the rights of the parties. The potential for abuse of such power is too great to ignore—as is the potential for unfairness and injustice. Unless and until a majority of this court recognize some remedy for an aggrieved party, whether that party is an employer, employee or bargaining representative, to seek judicial review of an order of SERB dismissing an unfair labor practice charge on the basis of no probable cause, I will continue to express my grave concerns with the majority's holding in *Chapter 643, AFSCME, supra.*

In my dissenting opinion in *Chapter 643, AFSCME, supra,* I suggested that an action in mandamus may be the appropriate remedy to challenge an order by SERB dismissing an unfair labor practice charge for lack of probable cause. *Id.* at 166, 572 N.E.2d at 86. For a writ of mandamus to issue, it must be shown that relator has a clear legal right to the relief prayed for, that there is a clear legal duty upon respondent to perform the requested action, and that the relator has no adequate remedy at law. *State, ex rel. Akron Fire Fighters Assn., v. Akron* (1978), 54 Ohio St. 2d 448, 450, 8 O.O. 3d 443, 444, 377 N.E.2d 512, 513. If SERB were to erroneously dismiss an unfair labor practice charge on the basis of no probable cause when, in fact, probable cause clearly existed, then mandamus would, indeed, be an appropriate remedy.

R.C. 4117.12(B) requires that SERB issue a complaint and conduct a hearing if, following an investigation of an unfair labor practice charge, there is probable cause to believe that an unfair labor practice has occurred. Thus, SERB has a clear legal duty to pursue an unfair labor practice case if there is probable cause to believe that an unfair labor practice has been committed. Similarly, the party who filed an unfair labor practice charge with SERB has a clear legal right to have that charge proceed beyond the probable-cause stage of the proceeding if, in fact, there is cause to believe that an unfair labor practice has occurred. Finally, this court's holding in *Chapter 643, AFSCME, supra,* demonstrates that there is no adequate remedy at law for a party seeking to challenge an order by SERB dismissing an unfair labor practice charge for lack of probable cause.

In addition to the foregoing, it is well established in Ohio that where an administrative agency issues an arbitrary, unreasonable, or unlawful final order which is *not* appealable, the order may be subject to judicial review by way of an action in mandamus. See, *e.g., State, ex rel. Ogan, v. Teater* (1978), 54 Ohio St. 2d 235, 8 O.O.3d 217, 375 N.E.2d 1233. Furthermore, it should be noted that the issue whether mandamus is appropriate to challenge an order by SERB dismissing an unfair labor practice charge on the basis of no probable cause does not hinge on the question of whether SERB's order was rendered pursuant to an "adjudication." Therefore, this court's holding in *Chapter 643, AFSCME, supra,* has no bearing on the question of whether

mandamus is an appropriate remedy to challenge such orders. There is no requirement that there be an underlying "adjudication" or "quasi-judicial" act before a writ of mandamus may issue.

My final observations concern our holding today in paragraph one of the syllabus which states that:

"Investigatory files compiled by the State Employment Relations Board pursuant to R.C. 4117.12 must be disclosed upon request pursuant to R.C. 4117.17 and 149.43 unless an *in camera* inspection demonstrates that all or any portions of the files are excepted from disclosure. Excepted information may be redacted prior to disclosure."

I agree with this holding, but one question comes to mind. Given this court's holding in *Chapter 643, AFSCME, supra,* what purpose would be served by providing a charging party in an unfair labor practice case with SERB's investigatory file if the unfair labor practice charge has been dismissed by SERB for lack of probable cause? Perhaps, one purpose might be to arm the aggrieved party with the evidence needed to successfully maintain an action in mandamus! In any event, today's holding requiring disclosure of SERB's investigatory files will, at least, aid any interested person in assessing how well SERB is exercising the ultimate and absolute power conferred upon it by the *Chapter 643, AFSCME* majority to finally determine the rights of the parties in unfair labor practice cases at the investigatory stage of the proceeding.