OPINION
{¶ 1} This appeal is brought by Melissa Fricke ("Melissa") and Paul Fricke ("Paul") from the judgment of the Court of Common Pleas of Allen County, Juvenile Division, finding their children Cierra Fricke (D.O.B. January 18, 1997), Anthony Fricke (d.o.b. February 9, 1999), and Carmen Fricke (d.o.b. May 4, 2000) to be dependent and terminating their parental rights.
 {¶ 2} On August 17, 1999, the Allen County Children Services Board ("ACCSB") removed Cierra and Anthony from their home and placed them in shelter care. ACCSB filed a complaint alleging that the children were dependant on August 18, 1999. On December 7, 1999, the trial court found the children to be dependant and they were placed in the temporary custody of ACCSB on February 7, 2000. ACCSB's temporary custody was terminated on June 5, 2000, and the children were returned to Melissa and Paul. On September 25, 2000, the children were again removed from the home and placed in shelter care. The trial court placed Cierra and Anthony under protective supervision and returned them to their parents.
 {¶ 3} On September 19, 2000, ACCSB filed a complaint after Carmen had been taken into emergency shelter care alleging that Carmen was dependant. The trial court found Carmen to be dependant on October 13, 2002, and returned her, along with Cierra and Anthony, to Melissa and Paul under protective supervision. On October 25, 2000, ACCSB removed Cierra, Anthony, and Carmen from the home and placed them in shelter care. Protective supervision was terminated on May 31, 2001, and the children were placed in the temporary custody of ACCSB. ACCSB filed for permanent custody on May 31, 2001. On April 8, 2002, April 17, 2002, and May 15, 2002, hearings were held on the termination of parental rights. The trial court granted ACCSB's motion for permanent custody of all three children on August 12, 2002. It is from this judgment that Paul raises the following assignments of error.
 That the trial court committed error to the prejudice of [Paul] by finding that the best interest of his children were (sic) served by granting permanent custody of the children to [ACCSB].
 That the trial court abused its discretion in finding that the record supported a finding that the best interests of his children were served by granting permanent custody of the children to [ACCSB].
 That the trial court committed error to the prejudice of [Paul] by finding that the children had been in the temporary custody of [ACCSB] for over 12 months of a 22 consecutive month period where it is clear that only 19 and one half months elapsed between the time the children were first taken and the filing of a motion for permanent custody.
 {¶ 4} Melissa also appealed from the trial court's judgment and raises the following assignment of error.
 The Allen County Juvenile Court's finding that because the children were in the temporary custody of [ACCSB] for twelve or more months of a consecutive twenty-two month period on or after March 18, 1999, that the court need only make a finding that it would be in the best interest of the children that permanent custody should be granted, was erroneous.
 {¶ 5} Before addressing the assignments of error, this court notes that the time delays in this case are extreme and do not comply with statutory requirements.
 (A) No later than seventy-two hours after the complaint is filed, the court shall fix a time for an adjudicatory hearing. The court shall conduct the adjudicatory hearing within one of the following periods of time:
* * *
 (2) If the complaint alleged that the child is an abused, neglected, or dependent child, the adjudicatory hearing shall be held no later than thirty days after the complaint is filed, except that for good cause shown, the court may continue the adjudicatory hearing for either of the following periods of time:
 (a) For ten days beyond the thirty-day deadline to allow any party to obtain counsel;
 (b) For a reasonable period of time beyond the thirty day deadline to obtain service on all parties or any necessary evaluation, except that the adjudicatory hearing shall not be held later than sixty days after the date on which the complaint was filed.
* * *
 (3) The court shall schedule the date for the dispositional hearing to be held pursuant to [R.C. 2151.35]. The parents of the child have a right to be represented by counsel; however, in no case shall the dispositional hearing be held later than ninety days after the date on which the complaint was filed.
R.C. 2151.28.
 {¶ 6} This court notes with concern that the original complaint for Cierra and Anthony was filed on August 18, 1999. The adjudicatory hearing was originally scheduled for hearing on September 17, 1999, however the hearing was continued until October 22, 1999, at the request of ACCSB. The reason for the continuation was that ACCSB had failed to achieve service upon its own employee, the caseworker. On October 22, 1999, the hearing was again continued, this time at the request of the parents to enable them time to find counsel. The hearing was continued until November 5, 1999. The November 5, 1999, hearing was continued at the request of ACCSB who claimed that it had not had time to issue subpoenas to its witnesses, the caseworker and a municipal police officer. Counsel for both parents objected to the continuance, but their objections were overruled. The trial court continued the hearing until November 16, 1999.
 {¶ 7} On November 16, 1999, the adjudicatory hearing was finally held. This court notes that this date is 90 days after the filing of the complaint. This is the time limit for the holding of the dispositional hearing. At the hearing, Paul and Melissa agreed to a finding that the children were dependent. The dispositional hearing was then scheduled for December 21, 1999, 125 days after the filing of the complaint. At the dispositional hearing, the trial court granted temporary custody to ACCSB. These hearings do not comply with the statutory requirements. During this entire time, the children were in the shelter care of ACCSB, which accounts for a portion of the twelve months used to seek permanent custody. The children were then returned to the custody of their parents on June 5, 2000.
 {¶ 8} On October 25, 2000, ACCSB removed Cierra, Anthony, and Carmen from the home and filed a motion requesting modification of custody to grant the agency temporary custody. A hearing was set for January 17, 2001. At the hearing, all parties were present, but the case was continued because a witness for the father had been hospitalized and because the trial court had only allotted 30 minutes for the hearing and numerous witnesses were to be presented. The hearing was continued until March 23, 2001. Eighty-four days had passed from when the children were removed from the home and the scheduled first hearing. During this time, the children remained in the custody of ACCSB under a shelter care order. A total of one hundred fifty days passed before the trial court even had a hearing on whether to grant temporary custody to ACCSB. On April 18, 2001, the trial court entered judgment that ACCSB be granted temporary custody and ACCSB stated that its primary goal was reunification of the children with their parents.
 {¶ 9} On May 31, 2001, ACCSB filed for permanent custody claiming that the children could not be returned to either of their parents within a reasonable period of time. "The court shall hold the hearing scheduled pursuant to [R.C. 2151.414(A)] not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty day deadline." R.C.2151.414(B). The trial court scheduled the hearing for September 18, 2001, 110 days after the motion for permanent custody was filed. On September 19, 2001, the hearing was continued until December 4, 2001, without explanation. This date is 187 days after the motion was filed. On November 28, 2001, Melissa requested a continuance of the hearing because the genetic testing had not been completed. This motion was granted, and the hearing was continued until March 6, 2002, 279 days after the motion for permanent custody was filed. On February 26, 2002, Melissa again filed a motion for a continuance to allow her new counsel time to prepare. This motion was granted and the hearing was continued until April 8, 2002, 312 days after the motion for permanent custody was filed. The hearing was held on April 8, 2002, April 17, 2002, and May 15, 2002. By the time the trial court completed the hearing, 349 days had passed since the motion for permanent custody was filed. This amount of time is not reasonable but establishes the relevant 12 month time period to support ACCSB's case for permanent custody. Once the children have been in custody for 12 of the previous 22 months, the parents are presumed to be unfit and all the trial court must find is that granting permanent custody is in the best interests of the children. If the hearings had been held in a timely manner, Carmen would not have been in the custody of ACCSB for 12 of the previous 22 months, but would only have been in the temporary custody of ACCSB for 269 days or less than nine months.
 {¶ 10} Although the time delays do not affect the judgment of the trial court, they do raise concerns. The purpose of the time limits imposed by the statutes is to reduce the amount of time the children spend awaiting determination of their fate. It is clear from this record that little regard was accorded the statutory time limits. In addition, since ACCSB suffers no consequences by failing to comply with the time constraints, but does gain an advantage in a permanent custody hearing by delaying the hearings, there is no reason for ACCSB to attempt to dispose of these matters in a timely manner. These are the only legal proceedings in which a failure to timely proceed with prosecution of the complaint carries no consequence. However, this court lacks the authority to change this system.
 {¶ 11} All of the assignments of error claim that the trial court erred in finding that granting permanent custody to ACCSB was in the best interests of the children.
 {¶ 12} R.C. 2151.414(B)(1) provides as follows:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
* * *
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home.
R.C. 2151.414
 {¶ 13} In this case, all three children were removed from the home for the final time on October 25, 2000. All three children had already been adjudicated to be dependent. The hearing on the motion for permanent custody was concluded on May 15, 2002. The children had remained in the temporary custody of ACCSB since October 25, 2000. Thus, the children clearly were in the temporary custody of ACCSB for more than 12 months of the prior 22 months. The only remaining question is whether the evidence supports the trial court's conclusion that the granting of permanent custody to ACCSB was in the best interest of the children.
 {¶ 14} The determination of the best interest of the child is within the sound discretion of the trial court. Miller v. Miller (1988),37 Ohio St.3d 71, 523 N.E.2d 846. An abuse of discretion is more than error of judgment; it is an attitude of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty. Sheriff's Dept. v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 498, 589 N.E.2d 24. A reviewing court should presume that the trial court's findings are accurate since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use these observations in weighing the credibility of the witnesses. In re Jane Doe I (1991),57 Ohio St.3d 135, 566 N.E.2d 1181.
 {¶ 15} At the hearings, the evidence showed that Melissa and Paul are separated and are in the process of getting a divorce. In the year since the temporary custody hearing and the permanent custody hearing, neither Melissa nor Paul has completed counseling. Melissa has not found suitable housing and is currently residing with her new boyfriend and their infant daughter. The psychological evaluation indicated that neither Paul nor Melissa had formed a bond with the children.[1] The evaluation also indicated that although Paul and Melissa are both capable of becoming good parents, they both tend to neglect the children when emotionally stressed. Given this evidence, the trial court could have concluded that granting permanent custody to ACCSB was in the best interests of the children. Thus, the trial court did not abuse its discretion and the assignments of error are overruled.
 {¶ 16} The judgments of the Court of Common Pleas of Allen County, Juvenile Division, are affirmed.
Judgments affirmed.
SHAW and CUPP, JJ., concur.
[1] The question is raised if the extreme time delays in this case inwhich the children had very limited contact with their parents may haveaffected the child-parent bond, especially the bond of Carmen with herparents since she was an infant when removed from the home.